UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 2 5 2012 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA

- against -

PHYLLIS SEEMONGAL,

Defendant.

10-CR-70

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from that provided by the Guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now "advisory" rather than mandatory, *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (alterations in original).

1

From approximately April 2005 to October 2009, Phyllis Seemongal engaged in a fraudulent scheme with her codefendant and husband Ishwardat Raghunath, her codefendant Halal Ahmed, and others. Raghunath and Ahmed, together with others, recruited unsuspecting buyers with good credit scores to purchase residential properties in Queen, Brooklyn, and the Bronx. They did so by telling the buyers that the properties were valuable for investment purposes, and by promising them that they would not have to make mortgage payments or take possession of the properties. Raghunath and Ahmed promised the buyers that the mortgage payments would be paid by others, or that they would be paid with rental income derived after the purchase. Some of the straw buyers were promised a fee, typically around $5,000, in exchange for allowing the use of their names and credit ratings.

Once a buyer was identified, Seemongal's codefendants then collected personal and financial information from the buyers. This information was used by Seemongal, Raghunath, Ahmed, and others to prepare fraudulent loan applications that were submitted to banks. These applications typically overstated the putative purchaser's income and bank account balances and stated that they held jobs that they did not. The sales prices of the properties—and the size of the resulting loans—were inflated by using fraudulent appraisals. After the mortgage loans were approved and closings arranged, the loan proceeds were deposited into bank accounts controlled by Seemongal's husband and codefendant, Raghunath.

The defendants did not use the proceeds to pay off the mortgages; instead, they largely retained them for themselves. In some cases, they did make initial mortgage payments; these payments ceased shortly thereafter. In others, no payments were made at all.

As a result, some of the buyers were contacted by lenders and were informed that they were personally responsible for the mortgage in their name. This was contrary to representations

2

made by Ahmed and Raghunath. In many instances, foreclosure lawsuits were filed in which the straw purchasers were named as defendants. Raghunath and Ahmed filed false and unauthorized bankruptcy petitions to stay or avoid foreclosure.

An eighteen-count indictment filed in early February 2010 charged Seemongal with a variety of crimes. On October 4, 2010, she pled guilty to Count One of the indictment. That count charged that, between March 2006 and April 2008, within the Eastern District of New York and elsewhere, Seemongal and her codefendants Raghunath and Ahmed, together with others, knowingly and intentionally conspired to commit wire fraud proscribed by 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349.

Seemongal was sentenced on January 10, 2012. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere, as well as the factors and considerations that a district court must evaluate in imposing a sentence in accordance with 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

The court finds the total offense level to be 18 and defendant's criminal history category to be category I, yielding a Guidelines range of imprisonment of between twenty-seven and thirty-three months. The conspiracy offense to which the defendant pled guilty carried a maximum term of imprisonment of 30 years. *See* 18 U.S.C. § 1343. The offense carries a maximum fine of $1,000,000. *See id.*

Seemongal was sentenced to time served and to five years of supervised release. A special assessment of $100 was imposed. No fine was imposed, and no forfeiture was ordered. She was ordered to pay $1,373,333.11 in restitution.

Respectful consideration was given to the Sentencing Guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence was "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The court imposed a non-Guidelines sentence under 18 U.S.C. § 3553(a) and *Booker*.

The court considered the "nature and circumstances of the offense[s] and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The offense is a serious one, but other considerations cut in favor of the imposition of a non-Guidelines sentence, and a term of incarceration would prove ruinous for defendant and her children.

The defendant was born in 1961 in Guyana. She had a happy childhood and enjoyed close relationships with her family. She immigrated legally to the United States in 1980 and became a U.S. citizen. She has eight adult siblings, from whom she is estranged. Ms. Seemongal's poor relationships with her siblings are a consequence of her 1999 marriage to her codefendant Raghunath, with whom she has four children. Mr. Raghunath was physically abusive to Ms. Seemongal, as well as to others. Ms. Seemongal was abused regularly by her husband. She suffered a miscarriage, and has glaucoma, as the result of his attacks. Defendant's children are in foster care, but she has completed the required family counseling necessary to have them returned to her. She has regular unsupervised visits with her children. Ms. Seemongal has held a variety of jobs since moving to the United States, and has been generally law-abiding. The conduct that led to the instant prosecution appears to be aberrant.

A sentence of time served, the term of supervised release imposed, and the restitution described above reflect the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Under 18 U.S.C. § 3553(a)(2)(B), there are two important factors to be considered by the sentencing court: specific and general deterrence. General deterrence is effectuated by the restitution ordered. The sentence will send a clear message that fraudulent activity of this sort will result in punishment for all conspirators. Specific deterrence appears to be a less pressing consideration in this particular case, but it will be effectuated by the various penalties imposed, especially the term of supervised release. It is unlikely that the defendant will engage in further criminal activity in light of her family ties and her regret for her past misdeed.

Jack B. Weinstein
Senior United States District Judge

Dated: January 10, 2012
      Brooklyn, New York